Orlando SANCHEZ, Individually and as Personal Representative of the Estate of Joe Roy Sanchez, Deceased, Carpio Sanchez, Margarito Sanchez, Chriseldo Sanchez, Delfino Sanchez, and Leo Sanchez, heirs at law of the Deceased, Juan Cruz Sanchez, a minor, beneficiary under the Last Will and Testament of the Deceased, and the Estate of Joe Roy Sanchez, Deceased, Plaintiffs,

v.

David MARQUEZ, Ernest Sandoval, Costilla County Sheriff and San Luis Police Chief, Costilla County, Colorado, and the City of San Luis, Colorado, Defendants.

Civ. A. No. 78–K–304.

United States District Court, D. Colorado.

Sept. 20, 1978.

Walter L. Gerash, Denver, Colo., J. O. Lewis, Alamosa, Colo., for plaintiffs.

Normando R. Pacheco, Richard D. Greengard, Robert Eugene Crane, Elliott & Greengard, Denver, Colo., Wesley H. Doan, Lakewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The complaint herein alleges that Joe Roy Sanchez was unmarried at the time of his death on June 2, 1977. The complaint is brought by the personal representative of his estate as well as his brothers and sisters who are his sole heirs at law. It is alleged that defendant David Marquez, an officer of the San Luis, Colorado Police Department and a deputy sheriff of Costilla County, Colorado wrongfully assaulted and battered and then wrongfully shot and killed Joe Roy Sanchez. The prayers for relief are of particular interest in that plaintiffs claim damages for decedent, his estate, and for themselves personally. The defendant David Marquez has filed a counterclaim against the estate of Joe Roy Sanchez in which he alleges that without just cause or provocation the decedent shot him and caused him grievous bodily harm. As alleged it appears that on June 2, 1977 while acting as a police officer and deputy sheriff, the defendant Marquez was called to the San Luis Mercantile Store to quell a disturbance caused by the decedent. During the ensuing melee Marquez was wounded by Sanchez who was shot and killed by Marquez.

In an effort to trim the issues for trial and based on the foregoing I am called upon to rule on a number of motions.

The town of San Luis filed a motion for summary judgment on April 18, 1978; the defendant David Marquez filed a motion to dismiss on May 15, 1978; the defendant Ernest Sandoval, in his capacity as Costilla County Sheriff and San Luis Police Chief filed a motion to dismiss on June 7, 1978; and the plaintiffs filed on June 13, 1978 a motion to dismiss the prayer and claims for exemplary damages in the counterclaim of defendant Marquez.

## I

■ The complaint alleges that defendant Marquez was acting as an "employee and active member" of the San Luis Police Force at the time of the acts complained of. Plaintiffs have not alleged that defendant Marquez was implementing a policy of the City of San Luis or the County of Costilla at the time he committed the alleged wrongful acts nor have they alleged that there exists a formal or informal policy of either governmental entity to shoot and kill citizens without cause or justification. *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) rejects the contention that the doctrine of *respondeat superior* is applicable to actions under 42 U.S.C. § 1983. There the court held "that a municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). Courts in this circuit have consistently recognized that "personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976); *Battle v. Lawson*, 352 F.Supp. 156 (W.D.Okla.1972).

Accordingly, the motion for summary judgment filed by defendant City of San Luis is granted. For the same reasons, I dismiss the complaint against Costilla County, Colorado *sua sponte*.

## II

■ Similarly, no allegation has been made that defendant Ernest Sandoval, in his capacity as Costilla County Sheriff and Police Chief of San Luis, directed or was involved in the acts alleged to have been committed by defendant David Marquez. His motion to dismiss is likewise granted.

## III

■ C.R.S. 13–20–101(1) (1973) reads as follows:

All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued, but punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed; and in tort actions based upon personal injury, the damages recoverable after the death of the person in whose favor such action has accrued shall be limited to loss of earnings and expenses sustained or incurred prior to death, and shall not include damages for pain, suffering, or disfigurement, nor prospective profits or earnings after date of death. An action under this section shall not preclude an action for wrongful death under part 2 of article 21 of this title.

Such an action must be brought by the personal representative of the deceased on behalf of the deceased's estate. C.R.S. 13–20–101(2). Title 42 of the United States Code, Section 1988, provides for the utilization of a state survival law, if necessary, in order to state a federal cause of action for the vindication of civil rights. *Salazar v. Dowd*, 256 F.Supp. 220 (1966). cf. *Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977).

Objection has been made that the personal representative of the deceased, Orlando Sanchez, lacks standing to bring this claim. Apparently defendants assert that in reality this is a wrongful death action which must be brought by the heirs named in the statute. The same contention was made in *Salazar, supra*, with no better success than it receives here. As Judge Doyle stated, "As to the contention that the action is in reality a wrongful death action, it would appear from the complaint that no such

intention can be attributed to counsel for the plaintiff. It is plain from the allegations of the complaint that the cause is founded on the alleged violation of Federal law." 256 F.Supp. at 222.

Here, the action survives the death of Joe Roy Sanchez. The defendant Marquez still lives so the plaintiff may seek punitive damages from him. The action is clearly not one of tort based upon personal injury so the plaintiff is not limited to seeking recovery for loss of earnings and expenses sustained or incurred prior to death as suggested by the statute.[1] It is beyond cavil that Section 1983 violations are not "tort actions based upon personal injury." *See Goodman v. Parwatiker*, 570 F.2d 801 (8th Cir. 1978); *Roach v. Kligman*, 412 F.Supp. 521 (E.D.Penn.1976); *Knipp v. Weikle*, 405 F.Supp. 782 (D.C.Ohio 1975) and *Salazar v. Dowd, supra*. At the very closest analytical proximity the violation has been called a "constitutional tort" in the nature of a trespass. *Taylor v. Nichols*, 409 F.Supp. 927 (D.C.Kan.1976), *aff'd*, 558 F.2d 561 (10th Cir. 1977). However, Section 1983 does not provide a remedy for a mere common law tort even when committed under color of state law. The section provides a remedy for violation of rights secured by the constitution. It is inconsequential that the actions under color of state law which violate a federally protected right may also constitute a tort or cause personal injury. The gravamen is not thus denigrated. Accordingly, the motion to dismiss the first claim for relief of Orlando Sanchez, in his capacity as the personal representative of the Estate of Joe Roy Sanchez, is denied.

## IV

In the case at bar, plaintiffs are not only alleging a Section 1983 claim for constitutional deprivations suffered by their deceased brother, but they also allege a constitutional deprivation of their own rights due to their brother's death. Specifically, plaintiffs allege that they have been denied the right to their brother's continued life; the right to have their brother be free from physical abuse and death; the right to have their brother freely associate; and the right to have their brother not be denied due process of law.

In *Jones v. Hildebrant*, Colo., 550 P.2d 339 (1976), *cert. dismissed*, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977), a mother filed an action against a police officer and the city and county, seeking to recover damages for the wrongful death of her 15-year-old son. Her amended complaint stated three claims for relief: (1) battery, (2) negligence, and (3) a violation of civil rights premised on 42 U.S.C. § 1983. The United States Supreme Court determined that an action under the Colorado Wrongful Death Statute is "classified as a property tort action and cannot be classified as a tort action 'for injuries done to the person.'" 97 S.Ct. at 2285, *citing Fish v. Liley*, 120 Colo. 156, 163, 208 P.2d 930 (1949). During oral arguments of the case, the court noted that petitioner's constitutional claim was based on an alleged deprivation of her own rights under 42 U.S.C. § 1983, rather than any alleged deprivation of her son's rights. In other words, "the asserted deprivation [was] not for any 'property loss,' but, rather, for the right of a child's mother to raise the child as she sees fit." 97 S.Ct. at 2285. Since the court found that the issue of whether petitioner was deprived of any constitutional liberty interest of her own was neither alleged in her complaint in the Colorado trial court nor presented in the petition for certiorari, the writ of certiorari was dismissed as improvidently granted.

---

1. Since the survival statute does not limit the damages recoverable in this case, I need not reach the question of whether both punitive and actual damages in a Section 1983 case could ever be limited or proscribed by state law. I am much persuaded by Mr. Justice White's dissent in *Jones v. Hildebrant et al.*, 432 U.S. 183, 97 S.Ct. 2283, 2287, 53 L.Ed.2d 209 (1977) and, if required, I believe I would rule that state law may not serve as a limitation on recovery in a Section 1983 case. It is abundantly clear to me that Section 1983 provides a federal right of action totally independent of any state remedies. Such purported limitations would constitute an impermissible interference with expressed federal policies.

In order to state a claim cognizable under § 1983 plaintiffs must show that they have been deprived of some right secured by the Constitution due to some action pursued under color of law. 42 U.S.C. § 1983. In the action brought for violation of the deceased's civil rights, the concern is with the right of an individual to life as recognized in the due process clauses of the fifth and fourteenth amendments to the United States Constitution. However, the issue now under consideration is whether there is an individual constitutional right to the continuation of another's life. (i. e., whether the plaintiffs here were deprived of their own constitutional rights by the shooting of their brother.) *Roe v. Wade, infra*, does not augur well for that proposition.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the court noted:

It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law . . . *Id.* at 710, 96 S.Ct. at 1165.

In a footnote, the court referred to other interests "protected not by virtue of their recognition by the law of a particular State but because they are guaranteed in one of the provisions of the Bill of Rights which has been 'incorporated' into the Fourteenth Amendment." *Id.* at 710–11 n.5, 96 S.Ct. at 1165.

Many rights have been recognized as fundamental constitutional rights, although not specifically mentioned in the Constitution. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In *Griswold v. Connecticut, supra,* Justice Douglas, writing for the court, expressed the view that "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that give them life and substance." *Id.* 381 U.S. at 484, 85 S.Ct. at 1681.

In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the court, after reviewing a line of decisions going back as far as *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), expressed the view that "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' are included in this guarantee of personal privacy." *Id.* at 152, 93 S.Ct. at 726. In the past the court has recognized that activities relating to marriage, procreation, contraception, family relationships, child rearing and education are included in the concept of personal liberty. 410 U.S. at 152–53, 93 S.Ct. 705.

In *Jones v. Hildebrant, supra,* the court indicated that the plaintiff had not asserted a constitutional right to raise a child. 97 S.Ct. at 2286 n.6. Such a right *may* have been recognized as another dimension to the right of privacy; a personal right "implicit in the concept of ordered liberty." However, where the right to raise, educate and associate with one's own child may rise to constitutional dimensions, the right of siblings to have their brother or sister continue living does not. The relationship between a parent and its offspring and the relationship between brother and sibling is not a difference in degree; it is a difference in kind. Though one has a constitutional right to have or not have a child, one does not have a constitutional right to have or not have a brother.

The Fourteenth Amendment of the United States Constitution does not furnish plaintiffs' theory with an anchorage. Plaintiffs' claim for relief based on a constitutional deprivation of their own rights due to their brother's death is dismissed for failure to state a cognizable constitutional claim under Section 1983.

V

▉ Plaintiffs' second claim for relief is dismissed without prejudice for failure to state a claim upon which relief can be

**364**

granted. General allegations of a conspiracy which are unsupported by facts are insufficient to constitute a cause of action under the Civil Rights Act. *Hoffman v. Halden,* 268 F.2d 280 (9th Cir. 1959); *Dunn v. Gazzola,* 216 F.2d 709 (1st Cir. 1954).

### VI

██ Defendant David Marquez' counterclaim sets forth a state claim for relief over which this court may exercise pendent jurisdiction. Where the state and federal claims derive from "a common nucleus of operative fact," the court must consider matters of "judicial economy, convenience and fairness to litigants" in determining whether to exercise pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

██ It is readily apparent that the facts alleged give rise to both the claims of the estate of Sanchez and the claims of Marquez. The issue of liability necessarily determines the success of one claim and the failure of the other. Were I to decline jurisdiction of the Marquez claim it would be possible for separate adjudications to render inconsistent results which would be grossly unfair to the litigants. Further, considerations of judicial economy and convenience suggest that the claims be tried in the same proceeding. Since I have elected to exercise pendent jurisdiction, it is appropriate to rule on plaintiff's motion to dismiss the prayer and claims for exemplary damages in the counterclaim. Perhaps it is quibbling, but the motion should be to strike rather than dismiss and, therefore, I treat it as such. The matter is governed by '73 C.R.S. 13–20–101(1) and, perforce, the claims for exemplary damages are stricken. Accordingly,

IT IS ORDERED

1. That the motion for summary judgment filed by defendant City of San Luis on April 18, 1978 is granted and the complaint against Costilla County, Colorado is dismissed;

2. That the motion to dismiss filed by defendant Ernest Sandoval, in his capacity as Costilla County Sheriff and Police Chief of San Luis, on June 7, 1978 is granted;

3. That the motion to dismiss by defendant David Marquez on May 15, 1978 is granted as to all individual plaintiffs. The motion to dismiss Orlando Sanchez, in his capacity as personal representative of the Estate of Joe Roy Sanchez, is denied;

4. That the motion to strike the prayer and claims for exemplary damages in the counterclaim of defendant David Marquez is granted;

5. That plaintiffs' second claim for relief is dismissed;

6. That a pre-trial conference is to be held on December 8, 1978 at 8:30 A.M. in Courtroom 200. Counsel are directed to follow the enclosed instructions in preparation for the pre-trial conference.