Rodney D. BECK, et al., Plaintiffs,

v.

KANSAS UNIVERSITY PSYCHIATRY FOUNDATION, et al., Defendants.

Myrtle A. WILLIAMS, et al., Plaintiffs,

v.

KANSAS UNIVERSITY PSYCHIATRY FOUNDATION, et al., Defendants.

Civ. A. Nos. 83–2094, 83–2095.

United States District Court, D. Kansas.

Feb. 10, 1984.

---

4. The USA's motion to dismiss or, in the alternative, for summary judgment, is decided under Fed.R.Civ.P. 12(b)(6).

**530**

John E. Shamberg, Lynn R. Johnson, Gerald T. Elliott, Ruth M. Benien, Shamberg, Johnson, Bergman & Goldman, Shawnee Mission, Kan., for plaintiffs.

Steven L. Ruddick, John C. McFadden, Sp. Asst. Attys. Gen., Kansas City, Kan., for the State of Kan.

Bryan E. Nelson, Ronald W. Nelson, Nina R. Schloesser, Alder, Nelson & McKenna, Overland Park, Kan., Charles E. Simmons, Chief, Bernard J. Dunn, Kansas Dept. of Corrections, Legal Div., Robert T. Stephan, Kansas Atty. Gen., Leslie A. Kulick, Bruce E. Miller, Asst. Attys. Gen.,

Topeka, Kan., D. Gary Hunter, Cooke, Ballweg, Borth, Hunter & Simpson, Prairie Village, Kan., Frank Saunders, Jr., Jerome V. Bales, Sally H. Harris, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., James R. Goheen, McAnany, Van Cleave & Phillips, Kenneth J. Reilly, Boddington & Brown, Kansas City, Kan., Larry L. McMullen, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., John J. Bukaty, Jr., Williamson, Cubbison & Hardy, Kansas City, Kan., Steven D. Ruse, James P. O'Hara, Shughart, Thomson & Kilroy, Overland Park, Kan., Hal E. DesJardins, Reid Stacey, Dept. of Social & Rehabilitation Services, Legal Div., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

These two cases stem from the March 20, 1981, shootings of Dr. Marc R. Beck and Ruth Rybolt at the University of Kansas Medical Center Emergency Room. According to the allegations of the complaints, the assailant, Bradley R. Boan, was later apprehended by authorities and confessed to the shootings. Both Dr. Beck and Ruth Rybolt died as a result.

Plaintiffs in their complaints name thirty separate defendants. Since filing their complaints, plaintiffs have voluntarily dismissed against the Kansas Adult Authority, the Board of Regents of the State of Kansas, the University of Kansas Medical Center, the Department of Social and Rehabilitation Services, Division of Mental Health and Retardation Services of the State of Kansas, the Osawatomie State Hospital, and the Rainbow Mental Health Facility. Plaintiffs did not sue the assailant, Bradley R. Boan.

This matter is before the court on the motions to dismiss and motions for summary judgment of many of the remaining defendants.

Plaintiffs' claims include alleged violations of their rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. §§ 1983 and 1988; and state law claims under §§ 1 and 18 of the Bill of Rights of the Constitution of the State of Kansas; the Kansas Tort Claims Act, K.S.A. 75–6101, *et seq.;* the Kansas Survival Act, K.S.A. 60–1801, *et seq.;* the Kansas Health Care Provider Act, K.S.A. 40–3401, *et seq.;* and the common law of Kansas.

Plaintiffs assert this court has jurisdiction over this matter under 28 U.S.C. § 1343, which grants jurisdiction over civil rights actions, and 28 U.S.C. § 1331, which grants federal question jurisdiction. The plaintiffs also claim this court has pendent jurisdiction over their state law claims. The plaintiffs in the Beck case, but not the Williams case, also assert diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The complaints in both of these cases are detailed and comprise more than forty pages in length. The parties have submitted hundreds of pages in briefs with respect to the various arguments for and against dismissal and summary judgment. This court has reviewed those extensive materials, and finds that oral argument would not be of material assistance to the determination of these matters. Rule 15(d), Rules of Practice of the United States District Court for the District of Kansas.

The following motions are presently before the court:

(1) The motion to dismiss, or in the alternative for summary judgment, of defendants Alfredo Calvillo, Ph.D.; Benjamin H. Day; Carrol Mills, Ph.D.; Simon Roth, Jr.; and Richard B. Walker. These defendants are members of the Kansas Adult Authority and hereinafter will be referred to as the Adult Authority defendants. According to the complaints, from October, 1977, until March, 1980, Bradley R. Boan was incarcerated at the Kansas State Penitentiary at Lansing, Kansas. In March of 1980, Boan was released from his incarceration by the Kansas Adult Authority, despite his propensity for violence and his danger particularly to the University of Kansas Medical Center, its staff, patients and visitors.

(2) The motion to dismiss of the Wyandot Mental Health Center, Inc., A.G. Arnold, M.D.; Steven Solomon, Ph.D.; Guillermo Ibarra, M.D.; and Janice Scott, M.D. These defendants shall be hereinafter referred to as the Wyandot defendants. According to the allegations of the complaints, Wyandot is a mental health treatment facility at which Dr. Solomon is director and defendants Ibarra, Arnold and Scott are doctors. The Wyandot defendants had at one time treated Bradley R. Boan, and plaintiffs allege that they were injured as a result of the negligence of these defendants in their treatment of Boan and their failure to prevent, intervene or protect against the acts of Boan.

(3) The motion to dismiss of Jack C. Pearson. Pearson is alleged to have been director of security services for the University of Kansas Medical Center and to have failed to maintain the emergency room in a safe condition and to have failed to warn plaintiffs of the foreseeable acts of violence by Bradley R. Boan.

(4) The motion to dismiss of Charles Hartman, M.D. Dr. Hartman is alleged to have been the director of the emergency room for the University of Kansas Medical Center and to have failed to maintain the emergency room in a safe condition and to have failed to warn plaintiffs of the foreseeable acts of violence by Bradley R. Boan.

(5) The motion to dismiss and the motion for summary judgment of the Kansas University Psychiatry Association, Associates in Psychiatry, Dr. Paul C. Laybourne, Jr., Dr. Alan L. Krueger, Dr. Donald W. Goodwin, Dr. Manuel P. Pardo, and Dr. William C. Eikermann. Like the Wyandot defendants, these defendants are alleged to have given psychiatric treatment to Bradley R. Boan, to have known that Boan had dangerous propensities as to the foreseeable plaintiffs, and to have failed to prevent, intervene or protect against the acts of Boan.

■ In considering a motion to dismiss, the factual allegations of the complaint must be taken as true and all reason-able inferences must be indulged in favor of plaintiffs. *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir.1974). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The question is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In order to rule favorably on a motion for summary judgment, the court must determine that the matters considered in connection with the motion disclose "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure. The principal inquiry is therefore whether a genuine issue of material fact exists. *Dalke v. The Upjohn Co.*, 555 F.2d 245 (9th Cir.1977); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976). A motion under Rule 56 will be denied unless the movant demonstrates beyond a reasonable doubt that he is entitled to a favorable ruling. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33 (10th Cir.1975). Pleadings and documentary evidence are to be construed liberally in favor of a party opposing a Rule 56 motion. *Harman v. Diversified Medical Investments Corp.*, 488 F.2d 111 (10th Cir.1973), *cert. denied* 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976).

## I. *Plaintiffs' Claims Under 42 U.S.C. § 1983*

■ This court will first address plaintiffs' claims under 42 U.S.C. § 1983. It is clear that § 1983 is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701,

96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The question in a § 1983 action is whether the actor, under color of state law, has deprived the plaintiff of a constitutional right. The statute imposes liability upon those who, acting under color of state law, deprive individuals of any rights, privileges or immunities secured by the constitution. Section 1983 provides a remedy only, and the substantive right must be found in the "Constitution and laws." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

### A. *The Adult Authority Defendants*

Plaintiffs have based their claims against the Adult Authority defendants on the conditional release of Bradley R. Boan from custody on March 5, 1980, and on his unconditional discharge on March 5, 1981. The killings herein occurred on March 20, 1981. These defendants contend that plaintiffs have failed to state a claim under § 1983 for which relief can be granted. This court will consider only defendants' motion to dismiss at this time, as summary judgment would be premature before discovery has been completed herein.

### 1. *Stating a Claim*

█ By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of a federal right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

In *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the plaintiffs brought a § 1983 action against state parole board members stemming from the release on parole of a prisoner who, after his release, killed plaintiff's decedent. The court upheld the dismissal of the cause of action against the defendants, but left open the possibility that under some circumstances a parole officer might be deemed to have violated someone's constitutional rights by releasing a person on parole. The court gave no guidance as to what circumstances might justify such a finding. In *Martinez*, the holding was based on the following factors: (1) there was a five-month time lapse between the release and the murder; (2) the assailant was by no means an agent of the parole board; and (3) the parole board was not aware that the decedent faced any special danger over and above the public at large.

In *Humann v. Wilson*, 696 F.2d 783 (10th Cir.1983), the Tenth Circuit Court of Appeals dealt with facts similar to those in *Martinez* except that the time lapse between release of the prisoner and the prisoner's attack of the plaintiff was only two months. The court held that the difference in time periods alone was not enough to differentiate the cases. *Humann v. Wilson*, 696 F.2d at 784.

In *Jensen v. Conrad*, 570 F.Supp. 114 (D.S.C.1983), a South Carolina district court dealt with a situation wherein a three-year-old child was beaten to death by the live-in boyfriend of the child's mother. The local Department of Social and Rehabilitation Services had received a report of child abuse in the child's family several months earlier, and the state's caseworkers had allegedly failed to properly investigate. Despite the fact that the child had been killed by a private party and not by an agent of the state, the court allowed the § 1983 action to proceed. The caseworkers there, as opposed to the parole officers in *Martinez*, knew or should have known that a "special danger" was presented to this child.

█ In this court's analysis, the most important factor in determining whether or not there is state action in connection with the release of a prisoner or mental patient is whether or not the assailant is an agent of the state. If so, then the action can always be attributed to the state. If not, then only under exceptional circumstances can the action be attributed to the state. One of those exceptional circumstances occurs when the state knows or should know

of a "special danger" to particular individuals as opposed to the public at large. Release under such circumstances may make the state culpable if there is some duty under the constitution and laws to protect the particular individuals. The third factor is the lapse of time between the release of the prisoner or mental patient and the action taken by him. The longer the time elapsed since the prisoner or mental patient has been released, the less likely it is that the action is attributable to the state. However, it does not necessarily follow that a short span of time between the release and the action will indicate state action, absent one of the other above-mentioned factors.

In the case at bar, the assailant was in no sense an agent of the state. The time elapsed between the assailant's conditional release and the killings was more than one year; but the time elapsed between the assailant's unconditional discharge and the killings was only a matter of weeks. If the assailant had been incarcerated to the end of his complete term, he would have been incarcerated on the date of the killings herein, though his term would have been completed within a matter of a few days thereafter. Finally, if the allegations of the plaintiffs' complaints are taken as true, the members of the Adult Authority knew or should have known that Bradley R. Boan posed a special danger to those individuals who might at any given time be present at the University of Kansas Medical Center, including the plaintiffs' decedents herein.

When the "state action" takes the form of the negligent release of a prisoner who takes the lives of individuals, rather than the taking of the lives by a state actor, the court must look to whether the release itself violated the plaintiffs' rights. Thus, the deprivation of life or liberty protected by the Fourteenth Amendment herein must stem from the deprivation of a right to state protection against criminal conduct. Such a right has been found to exist arising out of special relationships "created or assumed by the state in respect of particular persons" [*Fox v. Custis*, 712 F.2d 84, 88

(4th Cir.1983); *Jensen v. Conrad, supra,* 570 F.Supp. at 132], but the general rule is that absent some special relationship there is no such duty. *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982).

This court is convinced that under Kansas law, a duty existed on the part of the members of the Adult Authority to protect individuals who could be expected to be found at the University of Kansas Medical Center from foreseeable harm if they knew or reasonably should have known of the special danger which Bradley Boan posed toward those individuals. The Kansas Supreme Court, in *Cansler v. State of Kansas,* 234 Kan. 554, 675 P.2d 57, recently adopted the Restatement (Second) of Torts, § 319, which provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The Adult Authority, in having control over whether or not Bradley Boan was to be released or discharged, had control over Bradley Boan. If they knew or should have known of his potential for violence at the University of Kansas Medical Center, and nevertheless released him, the members violated the duty imposed upon them by the state. Further, in their determination to release Boan, the members of the Adult Authority were required to take into account "the best interests of society." Certainly that duty includes taking into account the special danger which the inmate may have to an identifiable group or individual. Therefore, plaintiffs have sufficiently stated claims under § 1983.

### 2. *Immunity*

These defendants assert immunity under the common law, which may afford to certain state officers either "absolute" or "qualified" immunity. Absolute immunity is provided to those "officials whose

special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). These officials include judges in their judicial functions and legislators in their legislative functions. *Id.* For other state officials, qualified immunity is the norm. *Id.*

The Supreme Court in *Martinez, supra,* and the Tenth Circuit in *Humann, supra,* left open the extent of immunity to be afforded to parole officials in the exercise of their parole board functions. Of those circuit courts which have addressed the issue, the Seventh and Ninth Circuits have found parole board members entitled to absolute immunity, while the Fifth and Sixth Circuits have found parole board members entitled to qualified immunity. See *United States v. Irving,* 684 F.2d 494 (7th Cir.1982); *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.); *cert. denied* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981); *Wolfel v. Sanborn,* 666 F.2d 1005 (6th Cir. 1981), *cert. denied* — U.S. —, 103 S.Ct. 751, 74 L.Ed.2d 969, *vacated* 458 U.S. 1102, 102 S.Ct. 3476, 73 L.Ed.2d 1363 (1982); *Fowler v. Cross,* 635 F.2d 476 (5th Cir. 1981).

 This court agrees with the decisions in the Fifth and Sixth Circuits that parole board members are entitled to qualified immunity. When Congress passed § 1983, it intended "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171–72, 81 S.Ct. 473, 475–76, 5 L.Ed.2d 492 (1961). It follows that the scope of immunities allowed to state officers under the statute should not be unduly broad, yet should take into account these factors: "(1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and

the judgment required by the public good." *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974). Under the test enunciated by the U.S. Supreme Court in *Harlow v. Fitzgerald, supra,* "governmental officials performing discretionary functions generally are shielded from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." This court believes plaintiffs' pleadings are adequate and the claim is sufficient in this respect.

 It is implicit that state officers have a right to err. *Scheuer v. Rhodes, supra,* 416 U.S. at 242, 94 S.Ct. at 1689. They do not have a right to act in bad faith. On the facts alleged before this court, there is a sufficient showing of a possibility of bad faith to survive a motion to dismiss. If the facts produced through discovery show otherwise, this court will, of course, entertain a motion for summary judgment.

3. *Statute of Limitations*

 Defendants assert that plaintiffs' claims against them are barred by a two-year statute of limitations. The court finds this argument to be without merit. The causes of action did not accrue herein against these defendants until the fact of injury was reasonably ascertainable to the injured parties. K.S.A. 60–513(b); *Cox v. Stanton,* 529 F.2d 47 (4th Cir.1975). The fact of injury here was not reasonably ascertainable until March 20, 1981, the date of the shootings. Plaintiffs' complaints were timely filed on March 18, 1983.

By this ruling, this court does not attempt to rule as a matter of law that the statute of limitations period under § 1983 for this cause of action is two years rather than some longer period. This court rules only that even if the statute of limitations is as short as two years, as the defendants contend, the plaintiffs' claims are nevertheless timely. The courts of the Tenth Circuit and the District of Kansas are widely split on the appropriate application of the statute of limitations in § 1983 actions, and

in this decision there is no need for the court to attempt to untangle the difficult questions of law which need clarification. For examples of the divergent viewpoints expressed by the courts of the Tenth Circuit and the District of Kansas, see *Shah v. Halliburton Co.,* 627 F.2d 1055 (10th Cir. 1980); *Garcia v. University of Kansas,* 702 F.2d 849 (10th Cir.1983); *Sullivan v. LaMunyon,* 572 F.Supp. 753 (D.Kan.1983), and the cases cited therein.

### 4. *Vicarious Liability*

 Defendants assert that they cannot be held individually liable for the release of Bradley R. Boan because the action was taken by the Adult Authority as a board and not by the members individually, an argument which they refer to as vicarious liability.

The Supreme Court has held that a member of a governmental board may be held liable for the actions of that board under § 1983 when the board member knew or should have known the action would violate a person's constitutional right or was taken with malicious intention to cause a deprivation of rights or other injury. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board members). This court finds that plaintiffs have sufficiently stated a cause of action.

### B. *Wyandot and KU Psychiatric Defendants*

 These defendants seek to dismiss plaintiffs' § 1983 claims for failure to state a claim upon which relief can be granted. This court finds that the § 1983 claims should be dismissed.

As noted above, in order to state a claim under § 1983, plaintiffs must show that these defendants acted "under color of state law" in depriving plaintiffs of rights under the "constitution and laws." These defendants are employees of private concerns rather than the state. As stated in one of their briefs, plaintiffs' argument is that these defendants performed "public functions".

The plaintiffs in their complaints are asserting, essentially, a system-wide failure of the mental health care system in the State of Kansas to provide adequate mental health care and treatment to Bradley R. Boan, an individual with known dangerous and violent propensities who as a result of the acts, errors and omissions of the defendants, and each of them, was allowed to cause the loss of life and other constitutional deprivations the plaintiffs suffered. [These defendants] are a part of that state system and the constitutional deprivations suffered by the plaintiffs and the plaintiffs' decedents arose directly out of their acts, errors and omissions in the provisions of mental health care and treatment which plaintiffs allege was conducted under color of state law.

This court finds that even if these defendants are a part of the mental health care system provided in the state, and even if that system failed to adequately care for Bradley R. Boan, such allegations do not constitute a claim under § 1983.

First, there is no allegation that the supposed "public function" which these defendants performed is "traditionally the *exclusive* prerogative of the state." *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Thus, this court finds it would be strained reasoning, under the facts alleged in this case, to find that these defendants were "acting under color of state law." Second, the court finds these defendants have not deprived plaintiffs of their constitutional rights. These defendants are not responsible for the release of Bradley R. Boan, and Boan was in no sense their agent when he performed the acts which took plaintiffs' decedents' lives. If these defendants are to be held liable in this case, it is under state tort law concepts of negligence and causation for which they will be liable, as § 1983 does not extend this far.

### C. *Defendants Hartman and Pearson*

These defendants contend that they are immune from suit under the Eleventh

Amendment. Additionally, Dr. Hartman has moved to dismiss the § 1983 claims of some of the plaintiffs, the sisters and brothers of Dr. Beck and Ruth Rybolt, on the basis that a constitutionally-protected associational interest between siblings does not exist.

The alleged violation of a constitutional right herein is the right of association between siblings. The existence of a constitutionally-protected right of association between siblings is a question which has not been definitively answered in the courts. In *Bell v. City of Milwaukee,* 536 F.Supp. 462 (E.D.Wis.1982), the court concluded that association between siblings is deserving of constitutional protection since siblings are members of the nuclear family. A different result was reached in *Sanchez v. Marquez,* 457 F.Supp. 359 (D.Colo.1978). There, the court stated: "Where the right to raise, educate and associate with one's own child may rise to constitutional dimensions, the right of siblings to have their brother or sister continue living does not. The relationship between a parent and its off-spring and the relationship between brother and sibling is not a difference in degree; it is a difference in kind. Though one has a constitutional right to have or not have a child, one does not have a constitutional right to have or not have a brother." *Id.* at 363.

In *Dohaish v. Tooley,* 670 F.2d 934, 937 (10th Cir.1982), the Tenth Circuit cited *Sanchez v. Marquez, supra,* for the proposition that plaintiff himself must have suffered the harm in order to bring a § 1983 action. While *Dohaish* did not involve a reasoned review by the court of the precise issue before this court in this case, it is an indication that the Tenth Circuit approves of the Colorado court's handling of the sibling issue.

■■■ This court concludes that in the Tenth Circuit the right of association protected by the United States Constitution does not extend so far as to allow a § 1983 action arising out of the death of one's brother. Therefore, the § 1983 claims against Dr. Hartman by the brothers and sisters of Dr. Beck and Ruth Rybolt in their own behalf must be dismissed.

As to the immunity question, the Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state."

■■■ The Eleventh Amendment does not expressly bar suits against a state by its own citizens, but the United States Supreme Court has consistently held that an unconsenting state is immune to suits brought in the federal courts by its own citizens, as well as by citizens of foreign states. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Whether or not the state is named as a party to an action, the claim is barred by the state's immunity under the Eleventh Amendment:

> ... [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford Motor Co. v. Dept. of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

■■■ The Eleventh Amendment is no shield, however, for a state official confronted by a claim that he deprived another of a federal right under color of state law. *Scheuer v. Rhodes, supra,* 416 U.S. at 237, 94 S.Ct. at 1686. When a state officer acts in such a manner, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his *person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct.

441, 453–54, 52 L.Ed. 714 (1908). (Emphasis supplied.)

■ Thus, while a plaintiff can seek no damages from the public treasury by suing state officers, damages may be a permissible remedy against some state officers individually. *Myers v. Anderson*, 238 U.S. 368, 35 S.Ct. 932, 59 L.Ed. 1349 (1915). The Tenth Circuit and the United States District Court for the District of Kansas have held in a series of cases that the University of Kansas, its teaching hospital and the hospital administrators, in their official capacities, are immune from lawsuits for money damages under 42 U.S.C. § 1983. *Wrenn v. State of Kansas*, 561 F.Supp. 1216, 1219–20 (D.Kan.1983). University officials or employees who have been sued for their alleged participation and acts which are violative of federal rights and are sued in their individual capacities are not protected by the Eleventh Amendment. *Id.* at 1220.

■ A claim against a state officer in his individual capacity may proceed on a theory that an officer acted beyond the scope of his authority or that, if he acted within his authority, such authority was unconstitutional. *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). While at one point in their complaints plaintiffs allege that Dr. Hartman and Pearson were acting within the scope of their authority. Plaintiffs alternatively allege that these defendants acted in bad faith, with reckless and callous disregard for the rights of others, with gross and wanton negligence, and with intentional and deliberate indifference to the foreseeable violent and dangerous propensities of Bradley Boan to the rights of the plaintiffs. Such alternative pleading is allowed under the Federal Rules of Civil Procedure.

In *Scheuer, supra*, the United States Supreme Court cautioned the district courts not to make premature decisions to dismiss complaints against state officials. It stated: "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes, supra*, 416 U.S. at 236, 94 S.Ct. at 1686.

■ In this case, plaintiffs have sued defendants Hartman and Pearson in their individual and official capacities. Within their official capacities, these persons are immune from suit. As to the claims against these defendants individually, if plaintiffs had alleged only that these defendants acted within the scope of their authority, these defendants would be immune under the Eleventh Amendment. But since alternative pleading is allowed under the Federal Rules of Civil Procedure and plaintiffs have sufficiently pled in the alternative, defendants' motions to dismiss on the basis of Eleventh Amendment immunity will be denied.

## II. *Plaintiffs' State Law Claims*

The court now turns to a determination of the defendants' motions as to each of the plaintiffs' state law claims.

### A. *Adult Authority Defendants*

■ The Adult Authority defendants advance numerous reasons why they believe plaintiffs' state law claims against them should be dismissed. The court agrees for the reasons set forth below.

Under the Kansas Tort Claims Act, K.S.A. 75–6104(d), a governmental employee acting within the scope of his employment may not be held liable for damages resulting from "any claim based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not that discretion be abused."

The court must look to the "nature and quality of the discretion exercised" in determining whether or not the actions are discretionary. *Robertson v. City of Topeka,* 231 Kan. 358, 362, 644 P.2d 458, 462 (1982). Discretionary functions under the "nature and quality" test include "those activities which entail the formulation of governmental policy, whatever the rank of those so engaged." *Downs v. United States,* 522 F.2d 990, 997 (6th Cir.1975).

By statute, the Adult Authority has responsibility for granting the conditional release and ultimate discharge of inmates. Conditional release is granted, upon conditions which the Adult Authority may impose, when an inmate has served his maximum term, less such work and good behavior credits as he has earned. K.S.A. 22–3718. Discharge is granted to an inmate on conditional release when he has satisfied the Adult Authority that his final release "is not incompatible with the best interests of society and the welfare of the individual." In no case can the discharge be made within a period of less than one year after the date of conditional release, except where the sentence expires within the year. A prisoner cannot be kept beyond his maximum sentence. K.S.A. 22–3722.

This court finds that under the "nature and quality" test the function of determining what conditions to place upon an inmate on conditional release and the decision whether a final release is compatible with the best interests of society and the individual are discretionary acts. Plaintiffs argue that some of the responsibilities of the Adult Authority are purely ministerial, such as granting conditional release by computing the maximum term of the inmate minus his work and good time credits. There is no allegation here that the computation of time leading to the conditional release of Boan was negligently made; nor is there any allegation that if the computation had been properly made the damages herein would not have occurred. Rather, the allegations go to the exercise of discretion by the Adult Authority members. Therefore, plaintiffs' state law claims against the individual members of the Adult Authority are barred by the discretionary acts exception to the Kansas Tort Claims Act.

B. *Wyandot and K.U. Psychiatry Defendants*

The Wyandot defendants and the K.U. Psychiatry Foundation defendants also seek to dismiss the state law claims. Plaintiffs have alleged negligence against these defendants in regard to the care and treatment of Bradley R. Boan, and for their failure to take precautions to deal with the violent and dangerous propensities they knew or had reason to know Boan presented to the University of Kansas Medical Center and its emergency room.

These defendants seek dismissal of plaintiffs' claims for negligent failure to warn upon the basis that Kansas would not recognize such a cause of action. Alternatively, defendants argue plaintiffs and their decedents are not the readily-identifiable victims such a cause of action is designed to protect.

The Kansas Supreme Court recently held that where liability is predicated upon negligent release of a patient from a mental hospital, the court should apply general rules of medical malpractice and negligence, and that there is no reason to apply a special relationship concept and the resulting affirmative duty to take some special step to protect a third party or the public. *Durflinger v. Artiles,* 234 Kan. 484, 673 P.2d 86 (1983). However, the question which the court addressed was narrowly drawn and the court was not called upon to decide whether liability could be predicated upon a therapist's failure to warn or failure to detain based upon a special relationship. *Id.,* 234 Kan. at 500, 673 P.2d 86. Nevertheless, the Kansas Supreme Court in *Durflinger,* through its approval of *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 131 Cal.

Rptr. 14, 551 P.2d 334 (1976), and *Lipari v. Sears, Roebuck & Co.*, 497 F.Supp. 185 (D.Neb.1980), gave a strong indication that Kansas would allow liability herein for failure to warn.

Thus, "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus, it may call for him to warn the intended victim of the danger, to notify the police, or to take whatever steps are reasonably necessary under the circumstances." *Durflinger*, 234 Kan. at 498–99, 673 P.2d 86, quoting *Tarasoff v. Regents of University of California, supra*, 17 Cal.3d at 430, 551 P.2d at 340, 131 Cal.Rptr. at 20.

In determining whether these defendants acted negligently such that these plaintiffs have a cause of action, the court must apply general negligence rules. "An act is wrongful, or negligent, only if the eye of vigilence, sometimes referred to as the prudent person, perceives the risk of damage. The risk to be perceived defines the duty to be obeyed, and *risk imports relation;* it is the risk to another or to others within the range of apprehension." *Durflinger*, 234 Kan. at 489, 673 P.2d 86. The allegations herein meet this test; therefore, plaintiffs have stated a claim upon which relief can be granted against these defendants.

■ In Count IV of the Williams case, plaintiff Ruby Shannon alleges she sustained severe emotional and psychological distress, mental anguish, anxiety, humiliation, degradation, pain and other injuries because of the fault of these defendants. The Wyandot Mental Health defendants move to dismiss on the basis of the "impact rule" in that, in order for there to be negligent infliction of mental or emotional distress, there must be a contemporaneous impact or physical injury to the person of the plaintiff by the operation of the defendant.

Plaintiffs contend the question of physical injury is a fact question. They further argue that the "impact rule" in Kansas may be precluded by either the "zone of danger" test or the rule in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). This court need not at this time determine the appropriate standard which would be applied in Kansas, as plaintiffs have sufficiently raised a fact question under any of the above-cited three standards.

Therefore, the state law claims of the plaintiffs against the Wyandot Mental Health defendants still stand.

■ The K.U. Psychiatry Foundation defendants also seek summary judgment on the basis that the statute of limitations has run. K.S.A. 60–513(c) provides a special statute of limitation for causes of action based on professional services rendered by a health care provider:

A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than four (4) years beyond the time of the act giving rise to the cause of action.* (Emphasis supplied.)

These defendants contend the action is time-barred because the failure to render professional services, if any, in this case could have arisen only during the physician-patient relationship which they contend ended in 1976. The court does not know if defendants have had dealings with Bradley R. Boan since 1976, and plaintiffs have not had an opportunity to conduct discovery on this issue. This court, therefore, finds that it is premature to determine that no factual question exists as to the statute of limitations. Therefore, this

court at this time must deny the K.U. Psychiatry Associates defendants' motion for summary judgment. Defendants are, of course, free to raise this issue again after the completion of discovery.

### C. *Hartman and Pearson*

The defendants Hartman and Pearson move to dismiss plaintiffs' state law claims on the basis that they are immune from suit under the exclusionary provisions of the Kansas Tort Claims Act. They both argue that their involvement in this matter, if any, arises solely from the exercise of discretionary functions for the state. As such, defendants claim they are immune under § 75–6104(d). Further, Pearson claims that his position is actually director of police for the hospital and he claims immunity under § 75–6104(m), which immunizes state officers for the failure to provide or the method of providing police protection. Dr. Hartman argues that to the extent that plaintiffs assert that he should have implemented or maintained a security system they are asserting a claim which is barred under § 75–6104(m).

Plaintiffs contend in their brief that the individual defendants are not sued because of discretionary functions, but rather for their operational level conduct and decision making. In Kansas, as noted above, the court must look to the "nature and quality of the discretion exercised." Under this standard, plaintiffs' complaints, to the extent that they seek to impose liability on these defendants for failure to formulate a security policy cannot stand. However, because plaintiffs' claims extend beyond the mere allegation of failure to formulate appropriate policy and include the failure to carry out policies and guidelines and duties which were already in effect, these claims are sufficient to survive a motion to dismiss.

Further, this court does not believe that dismissal is appropriate as to either Pearson or Hartman under § 75–6104(m). This exclusion appears on its face to apply to police and fire departments and is not so readily applicable to the defendants as employees or agents of a state health hospital. Facts may develop during discovery to show this provision of the Tort Claims Act is applicable, but these facts are not now before the court.

IT IS BY THE COURT THEREFORE ORDERED that the motions to dismiss of the individual members of the Kansas Adult Authority, Alfredo Calvillo, Benjamin H. Day, Carrol Mills, Simon Roth, Jr. and Richard B. Walker, are hereby denied as to the 42 U.S.C. § 1983 claims and granted as to the state law claims.

IT IS FURTHER ORDERED that the motions to dismiss of the defendant Wyandot Mental Health Center, Inc.; A.G. Arnold, M.D.; Steven J. Solomon, Ph.D.; Guillermo Ibarra, M.D.; and Janice Scott, M.D.; are hereby granted as to the 42 U.S.C. § 1983 claims and denied as to the state law claims.

IT IS FURTHER ORDERED that the motions to dismiss of defendant Jack C. Pearson are hereby denied.

IT IS FURTHER ORDERED that the motions to dismiss of defendant Charles Hartman, M.D., are hereby granted as to the 42 U.S.C. § 1983 claims of the brothers and sisters of Dr. Beck and Ruth Rybolt, and in all other respects are hereby denied.

IT IS FURTHER ORDERED that the motions to dismiss of the K.U. Psychiatry Association, Associates in Psychiatry, Dr. Paul Laybourne, Jr., Dr. Alan L. Krueger, Dr. Donald W. Goodwin, Dr. Manuel P. Pardo, and Dr. William C. Eikermann, are hereby granted as to the 42 U.S.C. § 1983 claims and denied as to the state law claims.

IT IS FURTHER ORDERED that the motions for summary judgment of the K.U. Psychiatry Association, Associates in Psychiatry, Dr. Paul C. Laybourne, Jr., Dr. Alan L. Krueger, Dr. Donald W. Goodwin, Dr. Manuel P. Pardo, and Dr. William C. Eikermann, are hereby denied.