See also, 671 F.Supp. 1555.

Janice C. BECK, et al., Plaintiffs,

v.

**KANSAS UNIVERSITY PSYCHIATRY FOUNDATION, et al., Defendants.**

Myrtle A. WILLIAMS, et al., Plaintiffs,

v.

**KANSAS UNIVERSITY PSYCHIATRY FOUNDATION, et al., Defendants.**

Civ. A. Nos. 83–2094–S, 83–2095–S.

United States District Court,
D. Kansas.

May 13, 1987.

John Elliott Shamberg, Lynn R. Johnson, David R. Morris, Ruth M. Benien, Shamberg, Johnson, Bergman & Goldman, Chartered, Overland Park, Kan., for plaintiffs.

Steven L. Ruddick, John C. McFadden, Sp. Asst. Atty. Gen., Kansas City, Kan., for the State of Kansas.

Charles E. Simmons, Chief Legal Counsel, Dept. of Corrections, Robert T. Stephan, Atty. Gen., Leon J. Patton, James D. Hall, David D. Plinsky, Bruce E. Miller, Carl A. Gallagher, Asst. Attys. Gen., Timothy G. Madden, Sp. Asst. Atty. Gen., Dept. of Corrections, Topeka, Kan., Ronald W. Nelson, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiffs' motion for reconsideration of the Court's Memorandum and Order filed on February 10, 1984, which granted the individual members of the Kansas Adult Authority's [KAA] motion to dismiss on the basis that they were immune from liability for plaintiffs' state law claims based on the discretionary function exception to the Kansas Tort Claims Act, K.S.A. § 75–6104(d). *Beck v. Kansas University Psychiatry Foundation*, 580 F.Supp. 527 (D.Kan.1984). Essentially what plaintiffs are claiming in their motion for reconsideration is that in its ruling on the earlier motion, the court only focused on the actual decisionmaking process by the Kansas Adult Authority (KAA). The court did not consider or address the issue of whether the KAA members had in fact exercised their discretion regarding Bradley Boan's case. The plaintiffs further argue that the court's discretionary function analysis did not determine the applicability of discretionary function immunity if the KAA determined Bradley Boan was a danger and released him anyway in violation of their obligation to protect society.

In the Court's Memorandum and Order filed on February 10, 1984, the court looked at the "nature and quality of the discretion exercised" in determining whether or not the actions of the KAA were discretionary. *Id.* at 539. The court found that the plaintiffs' allegations went to the exercise of discretion by the adult authorities in determining what conditions were to be imposed on the conditional release of Boan, and the determination of whether a final release was compatible with the best interest of society. The court found that plaintiffs' state law claims against the individual members of the Adult Authority were therefore barred by the discretionary acts exceptions to the Kansas Tort Claims Act. *Id.*

Plaintiffs now claim that while the members of the Kansas Adult Authority had the discretion to decide if a particular inmate was a danger to himself or others in conjunction with parole and conditional release decisions, the Kansas Adult Authority did not have the discretion to parole an inmate it determined to be a danger to himself or others, or to conditionally release such an inmate unless it placed sufficient or adequate conditions on the release. Plaintiffs request that they be allowed to present at trial evidence to substantiate that the Kansas Adult Authority completely failed to exercise its discretion. Alternatively, they seek to establish that the Kansas Adult Authority in fact knew Boan was a danger and allowed for his release without proper and necessary conditions in violation of their statutory and common law duties.

In response to plaintiffs' motion for reconsideration, the individual defendants of the KAA contend they are entitled to the discretionary function immunity under the Kansas Tort Claims Act. The defendants point out that prison inmates are under the custody of the Department of Corrections, not the Kansas Adult Authority, as plaintiffs claim. The Kansas Adult Authority was responsible for the general areas of pardon, parole and conditional release. Regarding conditional release, the KAA could deny an inmate parole and thus force him to serve his maximum sentence, less any good time credits, at which time the inmate would be freed from prison by operation of law and placed on conditional release. Defendants contend that there was no statutory or regulatory authority for the KAA to commit an inmate to a state mental hospital upon his conditional release from prison. The transfer of inmates to state institutions for treatment and their commitment for mental health treatment at the expiration of their term of confinement was the responsibility of the Department of Corrections under K.S.A. § 75–5209. The defendants concede that the KAA generally did not order conditions or supervision on conditional releasees. However, there were a few occasions when orders for supervision had been made.

The record indicates that in July, 1978, the KAA considered Boan for parole, refused to grant parole, and passed Boan's case to July, 1979. On July 9, 1979, Boan

had a second parole hearing, at which time his case was continued by the KAA. When a case is continued, the KAA uses that time to study the file further or to get more information. The record contains a memo dated July 18, 1979, to the penitentiary mental health clinic. In that memo, KAA Director Devon Knoll asked that Boan be interviewed to determine the feasibility of getting Boan admitted to a state mental hospital and requested that the KAA be notified for further determination. On August 23, 1979, Department of Corrections' psychiatrist Rizk Hemaya prepared a psychiatric consultation recommending Boan be paroled to a psychiatric facility. On January 5, 1980, the KAA, upon further consideration, ordered Boan to serve his conditional release date. The decision to order an inmate to serve his conditional release date is made through the participation of all KAA members. Whether to impose a condition requiring mental health treatment was the subject of debate within the KAA. The KAA also had a concern over the enforcement of conditions and the level of supervision.

At the time Boan was ultimately ordered to serve to his conditional release date, the KAA did not order supervision by a parole officer or a condition that he seek mental health treatment. Following the KAA's January 5th order, the Department of Corrections' legal advisor reviewed Boan's file, spoke with Boan's unit team supervisor, Sidney Zuberg, and reached the conclusion that insufficient evidence existed to involuntarily commit Boan to a hospital as a danger to himself and others. On March 18, 1980, Bradley Boan was released from prison automatically by operation of law, pursuant to K.S.A. § 22–3718. The law provides that a conditional releasee could be granted final discharge one year after his release if the KAA was satisfied that his final release was not incompatible with the best interest of society and the welfare of the individual. During the time of his conditional release, Boan was not arrested nor charged with any crime.

After a review of the record, the court finds that plaintiffs' motion for reconsideration of the Court's Memorandum and Order dated February 10, 1984, should be denied. In so ruling, the court has reviewed the record in this case, the case law cited by the parties, the applicable statutory authority, as well as the submitted exhibits. The court feels that its denial of reconsideration is supported by the recent decision by the Kansas Supreme Court in this case. *Beck v. Kansas Adult Authority*, 241 Kan. 13, 735 P.2d 222 and *Williams v. Kansas Adult Authority* (1987). The Kansas Supreme Court found that the conditional release of Boan was not discretionary as it was determined by mathematical equation. At 23. The statute does provide that the released inmate shall be subject to written rules and conditions as the Authority may impose. *Id.* (citing K.S.A. § 22–3718). Thus, the KAA is granted discretionary power to impose conditions upon the conditional release and to determine whether the inmate should be finally discharged before the maximum term or terms for which he was sentenced. *Id.* The court found that there was no evidence to establish that the KAA acted in bad faith; thus, it was protected from liability under the provisions of K.S.A. § 75–6104(d). *Id.* at 24.

The Kansas Supreme Court found that the state trial court, in granting summary judgment, found that the Authority was not liable because its decision fell within the discretionary function exception to the Kansas Tort Claims Act. The Supreme Court held that the trial court correctly noted that Boan's conditional release was determined by mathematical computation involving no discretionary decisionmaking on the part of the Board. The Supreme Court of Kansas held that the release of an inmate on parole is discretionary with the authorities; the release of an inmate on conditional release is not discretionary but is required by law, once a maximum term of imprisonment has been served. At 29. The court found that the authority to impose written conditions or rules upon a prisoner placed upon conditional release is discretionary. *Id.*

The court refuted plaintiffs' contentions that the Authority specifically failed to ful-

fill its official duties and that its actions were in bad faith, with reckless disregard for the rights of others, and were grossly and wantonly negligent. At 31, 33. The court stated that the Authority had no choice but to release Boan from custody. Whether it imposed conditions upon that release, such as use of medication, referral to mental health practitioners or hospitals, and directives that he not visit the Medical Center, was discretionary with the Authority pursuant to K.S.A. § 22–3718. At 33. In conclusion, the Supreme Court of Kansas stated:

> Although plaintiffs characterize the actions or omissions of the Authority as reckless, grossly and wantonly negligent, and as exhibiting intentional and deliberate indifference to the consequences, the claim is founded upon the Authority's release of Boan from custody, without imposing conditions upon him, without attempting to enter him in a mental hospital or otherwise securing mental treatment for him. The failure of a parole authority to carefully review all of the available records, the failure to send for other records which could have been secured, and the failure to take action which a thorough post-release review of the records indicate were warranted, if true, may be negligence, but it is simply an exercise or failure to exercise a discretionary function or duty. It is the kind of activity of a state agency which is specifically exempted from the provisions of the Kansas Tort Claims Act.
>
> We do not believe that the legislature, in enacting the Kansas Tort Claims Act, intended to subject parole or probation decisions of the authorities, whether the Kansas Adult Authority or the sentencing judge, to litigation in order to determine whether the Authority or judge turned every tap and jumped through every hoop in arriving at a decision to place an inmate on parole or to impose conditions on a conditional release. It is these discretionary functions of state agencies or employees which the legislature intended to place beyond the pale of tort litigation.

At 36–37. The rationale cited by the Kansas Supreme Court is controlling. The court finds that the plaintiffs have proffered no case law nor new evidence which would mandate the reconsideration of the Court's Memorandum and Order of February 10, 1984 and dissuade the court's conclusion that the acts complained of were within their discretionary function.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for a reconsideration as to the discretionary function immunity for KAA members granted in the Court's Memorandum and Order filed on February 10, 1984, is hereby denied.