**Samuel BRICKER, Plaintiff,**

**v.**

**MICHIGAN PAROLE BOARD, et al., Defendants.**

**Civ. A. No. 5–72237.**

United States District Court, E. D. Michigan, S. D.

Dec. 18, 1975.

Michael S. Friedman, Lustig & Friedman, P. C., Southfield, Mich., for plaintiff.

Max E. Simon, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Plaintiff Samuel Bricker has filed this action for injunctive relief and damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 against the Michigan Board of Parole, the individual board members, and one parole officer. He claims: (1) that a parole restriction, *i. e.*, that he not work for Central Sanitation Services (CSS) in any capacity, inhibits his right to seek gainful employment, subjects him to financial hardship, and restricts his fundamental rights of liberty; (2) that the Board wrongfully revoked his parole on September 4, 1975, in that it relied on insufficient evidence to justify revocation, thus subjecting plaintiff to re-incarceration, loss of his freedom, and loss of income; (3) that parole officer John Clarke conspired with various unknown individuals to harass plaintiff by imposing unnecessary and onerous conditions of parole on him and subjecting him to a

closer supervision than that accorded most parolees; (4) that the Board of Parole is not validly constituted. The respondent has filed a motion to dismiss or in the alternative for summary judgment.

These motions present four issues for resolution: (1) Whether the Michigan Board of Parole is subject to suit under § 1983; (2) Whether the parole condition that plaintiff not work for CSS in any capacity violates plaintiff's constitutional rights, thus giving rise to a suit for damages and injunctive relief under § 1983; (3) Whether the individual members of the Board of Parole are immune from suit for damages under § 1983; (4) Whether the complaint states a claim regarding the alleged conspiracy of Parole Officer John Clarke.

On October 30, 1973, Samuel Bricker began serving a sentence of six months to four years following a state conviction for conspiracy to commit abortion. After exhausting all appellate remedies in the state courts, the Michigan Board of Parole placed him on parole in June, 1974, and subsequently amended his conditions of parole to restrict him from employment at CSS.[1] Between June 24, 1975 and October 24, 1975, Bricker was reincarcerated for allegedly violating this condition. On October 24, 1975, Bricker was re-released on parole with the same condition of parole. The Board also declined to permit him to be self-employed as a broker for waste removal services because of the difficulties involved in supervising such employment.

*The § 1983 Action Against the Board of Parole*

■ The Board of Parole is not a person within the meaning of section 1983 on both claims for damages and injunctive relief for the reasons given by the Supreme Court in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). *Madden v. New Jersey State*

---

1. In setting this condition the Board of Parole apparently relied on reports from law enforcement sources that CSS ownership was involved with organized crime figures.

Board of Parole, 438 F.2d 1189, 1190 (3d Cir. 1971); *Paige v. Pennsylvania State Board of Parole,* 311 F.Supp. 940, 941 (E.D.Pa.1970); *Glancy v. Parole Board of the Michigan Department of Corrections,* 287 F.Supp. 34, 36 (W.D.Mich.1968). Therefore, this action cannot be maintained against the Board.

*Conditions of Parole Allegedly Giving Rise to § 1983 Claims*

▋ Federal courts are loathe to interfere in the administration of state prisons absent a violation of a federal constitutional right, *Holt v. Sarver,* 442 F.2d 304, 307 (8th Cir. 1971); *Burke v. Levi,* 391 F.Supp. 186, 189 (E.D.Va.1975). The parole system is a part of the state correctional system in that parole is a form of custody whereby the prisoner leaves his place of incarceration while remaining in the legal custody and control of the Board of Parole until termination of his sentence. *Jones v. Cunningham,* 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). That the release of prisoners on parole has become an integral part of the penological system was made clear in *Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972), when the court stated, "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." The *Morrissey* court recognized that conditions of parole restrict a prisoner's activities *substantially* beyond the ordinary restrictions imposed by law on the average citizen; thus, a prisoner on parole could be restricted to a particular community, job, or home at the direction of his parole officer. *Id.* at 478, 92 S.Ct. 2593; *Marrero v. Warden,* 483 F.2d 656, 661 (3d Cir. 1973), *rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

▋ A state is not constitutionally required to provide for parole. *Rose v. Haskins,* 388 F.2d 91, 93 (6th Cir. 1968). If the state does provide for parole, it may stipulate its terms and conditions as well as the status of the parolee. *Hamilton v. Ford,* 362 F.Supp. 739, 742 (E.D. Ky.1973); *Singleton v. Shaffer,* 313 F.Supp. 1094, 1096 (E.D.Pa.1970). Reasonable conditions restricting state prisoners on parole may be imposed. *Forrester v. California Adult Authority,* 510 F.2d 58, 61 (8th Cir. 1975).

In *Birzon v. King,* 469 F.2d 1241, 1243 (2d Cir. 1972), in a *habeas corpus* proceeding a prisoner whose parole had been revoked argued that a restriction imposed by the parole board preventing him from associating with individuals having criminal records violated his First Amendment freedom of association. The court stated:

"It has been properly held that the Government can infringe the first amendment, rights of prisoners so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment . . . By the same token, when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee."

The court then found that the challenged restriction was reasonably and necessarily related to the government's interest in supervising the prisoner's activities during the term of his sentence and thus did not violate the prisoner's First Amendment rights.

▋ The court holds that the restriction against working for CSS was shown by the record to be reasonably related to the purpose of the plaintiff's parole and that the difficulties of supervising a self-employed broker for waste removal services are reasonable grounds for imposing the condition that he not be self-employed.

▋ Although the restrictions may result in diminished income during the remainder of the sentence, there is no indication that plaintiff will be deprived thereby of the right to work at other

acceptable employment at a higher salary.[2] Since parole is an extension of confinement, a limitation resulting in diminished income during parole does not constitute a constitutional violation. Had plaintiff remained incarcerated for the entire period of his sentence, his income from prison employment would have been negligible.

■ This court will not second guess the Michigan Parole Board in its determination that these conditions were necessary to petitioner's rehabilitation because they would constitute interference with the state penal system without a showing of a violation of federal rights. A federal court will not superimpose its own judgment on the exercise of the parole board's discretion.[3]

■ Plaintiff alleges that the Board of Parole members acted wrongfully in ordering that he be closely supervised while on parole. Michigan law provides that the Board of Parole shall specifically state conditions of parole and provide for proper supervision of the parolee in accordance with board rules and pursuant to its discretion. M.C.L.A. § 791.236. Thus, the Board of Parole had discretion to order a "tight parole" with regard to Bricker. In *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), the Supreme Court held that a conscious exercise of selective enforcement of criminal statutes is not in itself a federal constitutional violation unless the selection is based on an unjustifiable standard such as race or religion. Bricker cannot prevail on his claim that he was more rigorously supervised than other parolees absent an allegation that such supervision resulted from the use of an unjustifiable standard.

■ The court will dismiss Bricker's claim that the Parole Board relied on insufficient evidence in its findings that Bricker violated his parole. There is no allegation that the required *Morrissey* hearings were not held. In addition the court will not examine the factual basis for the parole board's determination that a parole violation had occurred. Since plaintiff is attacking his reincarceration in a state prison, it would appear that he cannot cast this claim as a civil rights claim. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The plaintiff raised the identical issue in a prior *habeas* petition, dismissed by this court on September 5, 1975, for failure to exhaust state remedies, *In Re Bricker,* Civil Action No. 5–71644 (E.D.Mich.). By clothing this claim in civil rights raiment plaintiff hopes to circumvent the exhaustion requirement. For the purpose of this motion the court accepts the allegation that the Parole Board's determination that plaintiff had violated parole might have been erroneous, but the Board's errors should be corrected through the state appellate process.

*Immunity*

Defendants argue that Parole Board members are immune from a suit for damages under § 1983 for the same reason that judges are immune from such suits. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Plaintiff responds citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland,* 420 U.S.

---

**2.** The record indicates that plaintiff has been offered three different positions in an eighteen month period; thus, the court infers that securing adequate employment is not unduly difficult for plaintiff despite his age (60). He is now working.

**3.** In *Hoffa v. Saxbe,* 378 F.Supp. 1221, 1237 (D.D.C.1974), the court upheld restrictions preventing James Hoffa from engaging in union activities as a condition of a presidential pardon. The court analogized this condition to conditions placed on parolees upon release on parole, stating the boards of parole place such conditions as are reasonably related to the valid ends of the parole system. The court also cited many examples where courts had placed individuals on probation upon conviction for criminal offenses, conditioning such probation upon the defendant's not engaging in a particular business or occupation during the term of probation. *Id.* at 1237, n. 60.

308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In *Pierson, supra,* the Supreme Court held that judges are immune from liability under § 1983:

"This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' [citations omitted.] It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."

*Id.,* 386 U.S. at 554, 87 S.Ct. at 1218.

*Scheuer v. Rhodes, supra,* holds that officials of a state executive government enjoy only a qualified immunity from § 1983 lawsuits. *Scheuer* held that state executive officers are not absolutely immune from suit under § 1983 and that a "qualified immunity is available to officers of the executive branch of Government," the degree of immunity varying with the scope of responsibility, the discretion of the office, and all the circumstances as they reasonably appeared at the time of the acts in question. The court stated that officers with a broad scope of duties and authority must often act swiftly and firmly at the risk that action deferred will be futile and that officials, like legislators and judges, should be able to rely on their customary sources for the factual information on which they make decisions and act. 416 U.S. at 246, 94 S.Ct. 1683. In *Wood v. Strickland, supra,* the court held that school board members are entitled to a good faith immunity from suit for damages under § 1983. Thus, if the school board members knew or reasonably should have known that their actions would violate a student's constitutional rights or if they acted with a malicious intention of depriving students of their constitutional rights or otherwise doing them injury, they would be liable for damages under § 1983.

 The court does not believe that the qualified immunity described in *Scheuer* and *Wood* applies to Parole Board members because Parole Board members are not like executive government officials or school board members. In deciding to grant, deny, or revoke parole, they act in a quasi-judicial capacity, as an arm of the sentencing judge, just as prosecuting attorneys act in a quasi-judicial capacity in bringing criminal actions.

The considerations set forth by the Supreme Court in *Pierson v. Ray, supra,* are equally applicable to parole officers who are charged by law with the duty of granting or denying parole to prisoners in a manner which rehabilitates the prisoners and protects society at the same time. If Parole Board members were to be liable for damages because a prisoner disagrees with their decision, the threat of constant litigation would have an inhibiting effect upon the free and courageous exercise of their duties. *Fitzgerald v. Procunier,* 393 F.Supp. 335 (N.D.Cal.1975); *Joyce v. Gilligan,* 383 F.Supp. 1028 (N.D.Ohio 1974); *see also, Hilliard v. Williams,* 465 F.2d 1212 (6th Cir. 1972) citing *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972).

In the instant case, the decision to impose certain conditions of parole fell within the quasi-judicial functions vested in the Parole Board members by Michigan law. Under the allegations of this case as developed from the affidavits, the defendant Parole Board members are immune from suit under § 1983.

*Conspiracy Claim*

 Plaintiff has merely alleged that defendant Parole Officer John Clarke conspired with various unknown individuals to violate plaintiff's constitu-

tional rights. Allegations of conspiracy in violation of § 1985 must be supported by specific factual allegations. *Blackburn v. Fiske University,* 443 F.2d 121 (6th Cir. 1971). Plaintiff's allegations are not.

### Constitution of Parole Board

Plaintiff has also alleged that the Parole Board is not validly constituted, but in the absence of any factual allegations establishing how this alleged defect violated petitioner's constitutional rights, the court will dismiss this claim.

The court concludes that plaintiff's complaint fails to state a claim upon which relief may be granted, and, accordingly, it will be dismissed.

So ordered.