**Freddie Lee SCOTT, Plaintiff-Appellant,**

v.

**Judge Wilson HAYES,
Defendant-Appellee.**

**No. 83-7398
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 21, 1983.

---

Ronnie L. Williams, Mobile, Ala., for plaintiff-appellant.

Franklin G. Shuler, Jr., Michael Gillion, Mobile, Ala., for defendant-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

This appeal presents a single issue: is a judge absolutely immune from liability under 42 U.S.C.A. §§ 1981, 1983, and 1985(3) for his comments from the bench and in chambers suggesting or ordering that a party in a divorce proceeding before him have a vasectomy as a condition of a favorable property settlement? Holding that the judge is absolutely immune under the facts of this case, we affirm the district court's grant of summary judgment in his favor.

Plaintiff Scott filed a petition for divorce on July 29, 1981, in the Circuit Court of Baldwin County, Alabama. In his prayer for relief, Scott requested that the parties' jointly owned home be awarded to him. The divorce case was assigned to Judge Wilson Hayes, and came to trial before him on December 17, 1981. After the conclusion of the testimony in the divorce trial, Judge Hayes directed his closing remarks from the bench to the parties and their attorneys. No transcript was made of these comments. It is undisputed that in the course of these comments, and in open court, Judge Hayes

brought up and discussed the possibility of Scott having a vasectomy. Scott testified that Judge Hayes told him, "I want you to have a vasectomy within ten days or else." [1] Scott testified that as Hayes left the bench he again said, "I want you to have that vasectomy within ten days or else ... There is enough pickaninnies in this world." [2] Scott testified that he understood Judge Hayes' "or else" to mean that if he didn't get the vasectomy, he would not be awarded the house. Scott's attorney, Brackin, testified that Judge Hayes stated in open court that he "would look with great interest to see whether Mr. Scott has a vasectomy," [3] and although initially mentioning a ten-day deadline, changed it to fourteen. Brackin testified that he followed Judge Hayes into his chambers after he left the bench, and that Judge Hayes told him that if Scott had the vasectomy he would probably be allowed to keep the house—again stating his opinion that there were enough pickaninnies in the world. Immediately upon leaving Judge Hayes' chambers, Brackin relayed this information to Scott. At a hearing before the Alabama Court of the Judiciary (a state judicial disciplinary court), Judge Hayes testified that in open court at the close of the divorce trial, "I commented, perhaps vehemently, that the plaintiff Mr. Scott ought to have a vasectomy inasmuch as he was unable to support the children he had and he bade fair to have some more." [4] Although denying that his comments were intended as an order to Scott, Judge Hayes testified that, "I feel confident that my comments made an impression on Mr. Scott, because I intended them to. I was ... almost to the point of a rage at his failure to support his children and then seeking to take what property he, that was in the family for himself," [5] and that "I encouraged him very strongly to seek a vasectomy." [6] Regarding his in-chambers conversation with Brackin,

Judge Hayes testified that, "I spoke sharply to his counsel and in effect told him that it would be a marvelous idea and that his good faith might be indicated by the vasectomy, and would look forward to hearing a report from it." [7]

On December 30, 1981, Brackin submitted a "Post-Trial Report to the Court" in which he stated that Scott had undergone a vasectomy. On June 30, 1982, Judge Hayes entered a decree in the divorce case in which, among other things, he awarded Scott the house.

On December 17, 1982, Scott filed a civil rights action under 42 U.S.C.A. §§ 1981, 1983, and 1985(3) against Judge Hayes and Brackin in the United States District Court for the Southern District of Alabama. On June 22, 1983, the district court, adopting the United States Magistrate's recommendation, granted summary judgment in Judge Hayes' favor on the grounds of judicial immunity.

The principles of law governing the scope of judicial immunity are clear. To determine if Judge Hayes is entitled to judicial immunity, we must apply the two-part test of *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978): (1) whether Judge Hayes' actions in suggesting or ordering the vasectomy were made while acting in his judicial capacity; and if so, (2) whether or not these actions fall clearly outside Judge Hayes' jurisdiction as a circuit court judge in Alabama. If both parts of this test are met, despite the egregious and injudicious character of his actions, Judge Hayes is absolutely immune from liability under the Civil Rights Acts.

[T]he factors determining whether or not an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the

---

1. Record Ex., Plaintiff's Deposition at 47, 75.

2. *Id.* at 74.

3. Record Ex., Brackin Deposition at 35, 39. Judge Hayes' bench notes from the December 17, 1981, divorce trial state "expect to hear of vasectomy within 14 days." R. at 60.

4. R. at 62–63.

5. *Id.* at 66–67.

6. *Id.* at 73.

7. *Id.* at 63.

parties, *i.e.*, whether they dealt with the judge in his judicial capacity. *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107.

This test has been restated by the former Fifth Circuit to consist of a combination of four factors, whether:

(1) the precise act complained of . . . is a normal judicial function; (2) the events involved occurred in the judge's chambers [or in open court]; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his judicial capacity. *Harper v. Merckle*, 638 F.2d 848, 858 (5th Cir.1981) (quoting *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir.1972)).[8]

Plaintiff does not question these governing principles of law, but contends that Judge Hayes' in-court and in-chambers comments fail to meet the *Stump-Harper* tests for a judicial act. We disagree.

■ The first factor in the *Harper* test involves a determination of whether the precise act complained of is a normal judicial function. Plaintiff claims that the ordering of an involuntary sterilization is not such a function, seeking to disregard the context in which the order arose. The precise act of which the plaintiff complains is the ordering of an involuntary sterilization as a condition to a favorable property settlement in the divorce proceeding. The setting of conditions for property settlements in divorce cases is clearly a normal judicial function. Whether the condition of losing his home was implicit in Judge Hayes' in-court "or else," as plaintiff has testified, or was made explicit in Judge Hayes' in-cham-

bers conversation with Brackin, it still arose from and within the context of the divorce case.

The second *Harper* factor requires that the events involved occurred in open court or in the judge's chambers. Clearly, the comments to Scott took place in open court. Equally clearly, the conversation between Judge Hayes and Brackin took place in the judge's chambers. Plaintiff contends, however, that the judge's acts occurred on the courthouse steps when Brackin informed him of his conversation with Judge Hayes. This claim blurs the focus of the second factor in *Harper* from the judge's actions to the parties' knowledge or interpretation of those actions. Of course, the conversation relayed to the plaintiff on the courthouse steps by Brackin occurred in the judge's chambers.

The third *Harper* factor involves a determination if the judge's actions involved a case currently pending before his court. Plaintiff claims that, because the testimony had concluded, Judge Hayes' comments in open court did not concern the divorce case. This claim is contradicted by the record. As part of his in-court statements, Judge Hayes told the parties that he was taking the case under advisement.[9] The divorce case was pending before Judge Hayes until June 30, 1982, when he entered his final decree. Plaintiff also contends that the vasectomy comment had nothing to do with the divorce case, and thus did not relate to a case pending before Judge Hayes. This claim is also contradicted by the record,[10] from which it is clear that the context in which the vasectomy comment arose was

---

8. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) this Circuit adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent.

9. R. at 62; R. Ex., Brackin Deposition at 38–39.

10. R. at 73:

JIC: How, how did the vasectomy come up? I, I, I'm very—
Hayes: Uh, Judge—
JIC: perplexed about that although I realize that many things happen in a courtroom and otherwise, but I just—

Hayes: Uh—
JIC: What did it have to do with anything?
Hayes: It had nothing to do with the, with the case. The, the attitude of Mr. Scott indicated to me . . . My impression was that Mr. Scott in effect abandoned his children. He gleefully begat other children, not less than four were then on Aid to Dependent Children. My judgment indicated that there might be more. It's not-well, I encouraged him very strongly to seek a vasectomy.

Judge Hayes' "impression" of the facts surrounding Scott's parenthood could only have been gleaned from the divorce proceeding.

that of the divorce case pending before Judge Hayes.

The fourth and final *Harper* factor requires that the confrontation arise directly and immediately out of a visit to the judge in his judicial capacity. Certainly, Judge Hayes' in-court comments to the plaintiff at the close of the divorce trial arose *during* a visit to the judge in his judicial capacity. Likewise, the conversation between Judge Hayes and plaintiff's attorney was in connection with and arose directly and immediately out of the closing comments at the divorce trial. Plaintiff contends that he was not visiting Judge Hayes in his judicial capacity when his attorney informed him of his in-chambers conversation with Judge Hayes. Again, this claim blurs the focus of the *Harper* factor from the judge's actions to the parties' knowledge and interpretation of those actions. In any event, the conversation between the plaintiff and his attorney communicating the judge's in-chambers comments arose directly and immediately out of a visit to the judge in his judicial capacity—occurring on the courthouse steps and immediately after the conversation in chambers.

■ In sum, the comments of Judge Hayes in court and in chambers meet the requirements of the *Stump-Harper* tests, and are thus judicial acts. Plaintiff contends, however, that the dispute between the parties as to whether those comments were suggestions or orders is one of material fact, precluding the grant of summary judgment on the basis of judicial immunity. For purposes of the judicial act prong of the *Stump* test, it is not material whether these comments are characterized as suggestions or comments. In either event the comments were judicial acts, and the district court did not err in so holding.

In order to be entitled to judicial immunity, a judicial act must also meet the second prong of the *Stump* test as an act within the jurisdiction of the judge.

> [T]he scope of the judge's jurisdiction must be broadly construed where the issue is the immunity of the judge. . . . A judge will not be deprived of immunity because the action he took was in error,

was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.

*Stump,* 435 U.S. at 356–57, 98 S.Ct. at 1105 (footnote omitted).

Judge Hayes, as a circuit court judge in Alabama, had jurisdiction over "all civil cases," Ala.Code § 12–11–30 (1975), and clearly had jurisdiction over divorce cases, Ala.Code § 30–2–1. Further, the circuit court has discretion over the division of the marital estate pursuant to a divorce proceeding. Ala.Code § 30–2–51 (1975). The jurisdiction of the circuit court to entertain a petition for divorce and divide the marital estate pursuant to a divorce proceeding is "indeed a broad jurisdictional grant." *Stump,* 435 U.S. at 357, 98 S.Ct. at 1105.

Plaintiff seeks to distinguish the jurisdictional grant in *Stump* from that in the present case on the grounds that in *Stump,* "[t]here was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to Judge Stump." 435 U.S. at 358, 98 S.Ct. at 1105. Plaintiff contends that in Alabama in 1981 there was case law prohibiting a circuit court from considering a petition for the involuntary sterilization of a mentally deficient minor: *Hudson v. Hudson,* 373 So.2d 310 (Ala.1979). Plaintiff's reliance on *Hudson* is misplaced. First, the present case did not involve a petition for involuntary sterilization of a mentally deficient minor, but arose from a divorce property settlement over which the jurisdiction of the circuit court was clear. Second, the court in *Hudson* did not hold that the circuit courts of Alabama lack *jurisdiction* to entertain a petition for involuntary sterilization, but rather held that they lacked the *power* to order a sterilization. In *Stump* the Supreme Court considered the claim that the common law of Indiana, in particular *A.L. v. G.R.H.,* 163 Ind.App. 636, 325 N.E.2d 501 (1975), did not support Judge Stump's actions:

> In that case the Indiana court held that a parent does not have a common-law right to have a minor child sterilized . . . The

opinion, however, speaks only of the rights of the parents to consent to the sterilization of their child and does not question the *jurisdiction* of a circuit judge who is presented with such a petition from a parent. Although under that case a circuit judge would err as a matter of law if he were to approve a parent's petition seeking the sterilization of a child, the opinion in *A.L. v. G.R.H.* does not indicate that a circuit judge is without jurisdiction to entertain the petition. Indeed, the clear implication of the opinion is that, when presented with such a petition, the circuit judge should deny it on its merits rather than dismiss it for lack of jurisdiction. *Stump,* 435 U.S. at 358–59, 98 S.Ct. at 1106.

As in *Stump,* the opinion in *Hudson* speaks only to the power of the circuit court to order the involuntary sterilization of a minor, but does not question the jurisdiction of the circuit judge when presented with a petition for sterilization. Likewise, the clear implication of the *Hudson* opinion is that, when presented with such a petition, the circuit court should deny it on its merits rather than dismiss it for lack of jurisdiction.

■ Although Judge Hayes undoubtedly egregiously erred in suggesting or ordering that the plaintiff undergo a vasectomy as a condition of a favorable property settlement, in so doing he did not act in the clear absence of all jurisdiction. The district court did not err in holding that, as a matter of law, the divorce case was clearly within the jurisdiction of the circuit court.

Because there is no dispute of material fact as to whether Judge Hayes' acts were judicial acts, and because as a matter of law Judge Hayes had jurisdiction over the divorce proceeding and the property settlements arising therefrom, we AFFIRM the district court's grant of summary judgment on the basis of judicial immunity in Judge Hayes' favor.